**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **C3PO INTERNATIONAL, LTD.** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **DYNCORP INTERNATIONAL, LLC** | § | |
| | § | |
| **Defendants** | § | **JURY DEMANDED** |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, C3PO International, Ltd. ("C3PO") files this Original Complaint against the

Defendant, DnyCorp International, LLC ("DynCorp") and would show as follows:

### PARTIES AND CITATION

1. C3PO is an Afghan limited partnership with its principal place of business in Kabul,

   Afghanistan.

2. DynCorp is a limited liability company registered under the laws of the State of

   Delaware.  While its principal place of business is in Falls Creek, Virginia, it has offices

   throughout the United States, including one in Fort Worth, Texas.  It was this office that

   issued the Purchase Orders that are the subject of this lawsuit.  DynCorp's registered

   agent for service inside the State of Texas is CT Corporation System, 1999 Bryan Street,

   Suite 900, Dallas, Texas  75201.  Plaintiff requests that citation be issued at this time.

### JURISDICTION AND VENUE

3. Jurisdiction is proper in this court because there is diversity of citizenship and the amount

   in controversy exceeds $100,000.  Additionally, this case involves a contract that was

   governed, in part, under the Federal Acquisition Regulations (the "FAR").

## BACKGROUND FACTS

4. DynCorp is a primary contractor with the United States Department of Defense (the "DOD") providing logistical support in connection with the DOD's support of the Afghan National Police in Kabul Afghanistan. In connection with that work, DynCorp was required to secure a location for its staff to work, live, eat, and otherwise engage in ordinary life functions. DynCorp hired C3PO to provide those facilities.

5. On April 15, 2013, DynCorp issued Purchase Order NTM0001914 to C3PO to provide a facility for DynCorp's personnel that included fully furnished living quarters, office space, parking spaces, medical examination rooms, logistical storage areas, arms storage facilities, DFAC services (dining facilities), housekeeping and laundry services, fitness rooms, and morale welfare and recreation areas. C3PO accepted the purchase order under DynCorp's standard Terms and Conditions. This "compound" was commonly referred to as "North Gate".

6. On April 25, 2013, Purchase Order NTM0001956 was issued to C3PO to add additional facilities to the first PO and define the "period of performance" as May 3, 2013 through April 29, 2014. In connection with these PO's, C3PO invested significant funds in obtaining, building, retrofitting, and otherwise improving North Gate for its intended purposes under the DynCorp PO's. Additionally, C3PO entered into a number of other subcontracts in reliance on the DynCorp PO's. These subcontracts included the lease of space, fuel stations, supplies, and workforce. C3PO was also required to pay its taxes and fees for this project to the Islamic Republic of Afghanistan.

7. On July 2, 2103, there was a blast at North Gate. DynCorp moved its personnel from North Gate to the Barron Hotel in Kabul for a time in order to ensure their safety.

Almost immediately after the blast, North Gate was secured.  Afghanistan is a conflict area, and safety issues can occur anywhere. So, of the many other companies utilizing the North Gate facilities, none of them left the compound.

8. Between July 2ⁿᵈ and August 30ᵗʰ, DynCorp was giving C3PO recommendations and requests for security upgrades: thus indicating that it had every intention of returning to North Gate.  Based on those requests, C3PO invested even more funds into the operation of this facility, even taking out loans to cover the costs.

9. However, on August 30, 2013, DynCorp informed C3PO that it would not be returning to North Gate, and provided a formal termination of the PO's.  DynCorp informally indicated that it was staying at the Barron Hotel for security reasons.  C3PO informed DynCorp, an independent security assessment revealed that this location was not any safer than North Gate – although it cost approximately $2,000,000 more per year to operate.  This was an insufficient reason to terminate the DynCorp PO's.  In fact, under the Statement of Work, ¶4 and ¶15, there was a specific protocol to address safety concerns.  DynCorp did not follow these procedures.

10. Nonetheless, DynCorp did have the right to terminate upon 30 days notice under a termination for convenience clause.  However, under ¶¶ 15 and 16 of the Standard Provisions, DynCorp was to give proper notice, and then work with C3PO for an equitable adjustment of the remaining amounts due under the contract.  Not only did DynCorp fail to work out an equitable adjustment, DynCorp failed to pay C3PO for all amounts due from July, 2013 onward.

11. Because of this termination, the loss of revenue to C3PO was $2,631,272.00 from July, 2013 through October, 2013.  It was $6,578,180.00 from July, 2013 through April, 2014.

It was also forced to lay off approximately 50% of its workforce and lost its investments in preparing North Gate for DynCorp.

## CAUSES OF ACTION

### *Cause of Action One: Breach of Contract*

12. The foregoing actions constitute a breach of contract, for which C3PO has suffered actual and consequential damage.

### *Cause of Action Two: Quantum Meruit and Promissory Estoppel*

13. Alternatively, the foregoing gives rise to a claim for quantum meruit.  Goods and services were delivered, for which C3PO was not paid.  DynCorp knew that C3PO was investing millions of dollars into this project and expected to be paid for its services.  It is inequitable to allow DynCorp to avoid payment obligations for these services paid in reliance.

## JURY DEMANDED

14. Plaintiff hereby demands a trial by Jury.

## PRAYER

15. WHEREFORE, the Plaintiff respectfully requests that upon trial of the merits of this case, it have and recover from the Defendant all:

   a.  Actual and economic damages;

   b.  Consequential damages;

   c.  Fees and Costs as allowed by law;

   d.  Prejudgment and Postjudgment Interest as allowed by law; and

   e.  All other relief to which it may be justly entitled.

Respectfully Submitted,


By:    */s/ Murphy S. Klasing*
      MURPHY S. KLASING
      State Bar No. 00791034
      TANYA N. GARRISON
      State Bar No. 24027180
      Weycer, Kaplan, Pulaski & Zuber, P.C
      **11** Greenway Plaza, Suite 1400
      Houston, Texas 77046
      Telephone: (713) 961-9045
      Facsimile: (713) 961-5341
      mklasing@wkpz.com
      tgarrison@wkpz.com

LOCAL COUNSEL AS PER LR 83.10:

By:  */s/ Janice Cohen*
      Janice Cohen
      Texas Bar No.  04508362
      Two Turtle Creek
      3838 Oak Lawn Avenue, Suite 750 LB20
      Dallas, Texas  75219
      Telephone:  214.528.7977
      Facsimile:  214.528.7986
      jeclaw@sbcglobal.net

ATTORNEYS FOR PLAINTIFF
C3PO  INTERNATIONAL