IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
        FILED

    FEB 2 4 2015

CLERK, U.S. DISTRICT COURT
By _____
        Deputy
```

| | | |
|---|---|---|
| C3PO INTERNATIONAL, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-564-A |
| | § | |
| DYNCORP INTERNATIONAL LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion of defendant, Dyncorp
International LLC, to dismiss the complaint of plaintiff, C3PO
International, Ltd., for failure to state a claim upon which
relief may be granted.  Plaintiff filed a response, and defendant
replied.  After having considered all the parties' filings, the
pleadings, and the applicable legal authorities, the court
concludes that the motion to dismiss should be granted in part
and denied in part.

I.

The Complaint

Plaintiff initiated this action by a complaint filed on
July 23, 2014.  On October 27, 2014, plaintiff filed its first
amended complaint ("Complaint"), the pleading to which the motion

to dismiss is directed.  The following is a summary of the
allegations under the heading "Background Facts":

        Plaintiff operated a compound in Kabul Afghanistan referred
to as "Northgate."  Compl. 2, ¶ 5.  Defendant, a primary
contractor for the United States Department of Defense, issued on
April 15, 2013, a purchase order ("PO") for plaintiff to provide
facilities for defendant's personnel at North Gate, including
"fully furnished living quarters, office space, parking spaces,
medical examination rooms, logistical storage areas, arms storage
facilities, DFAC services (dining facilities), housekeeping and
laundry services, fitness rooms, and morale welfare and
recreation areas."  Id.  A second purchase order ("2nd PO") was
issued April 25, 2013, that added office space and a storage
facility to the PO and "define[d] the 'period of performance' as
May 3, 2013 through April 29, 2014."  Id., ¶ 6.

        The PO and 2nd PO each constituted a contract between
plaintiff and defendant that incorporated defendant's "Statement
of Work" ("SOW") and "Purchase Order Terms and Conditions"
("T&C").  "The contract was a fixed price contract in the total
amount of $11,909,724," which meant defendant was "obligated to
pay the entire amount of the PO on day #1 of performance."  Id.
at 3, ¶ 8.  In connection with the PO and 2nd PO, plaintiff
invested significant funds in obtaining, building, retrofitting,

and otherwise improving North Gate for defendant's use, and
entered into a number of subcontracts in reliance on the purchase
orders, including the lease of space, fuel stations, supplies,
and workforce.

On July 2, 2013, there was a blast at North Gate.  Defendant
moved some of its personnel to an alternative compound known as
the Barron Hotel in Kabul for their safety.  "Almost immediately
after the blast, North Gate was secured."  Id., ¶ 9.  Certain
employees of the defendant were arrested for assisting the
Taliban in the blast.

Following the blast, defendant made requests and
recommendations to plaintiff for upgrades in plaintiff's security
at North Gate.  In turn, plaintiff invested more money into the
facility to perform the requested upgrades.

On August 30, 2013, defendant terminated the PO, informally
citing security reasons.  Plaintiff told defendant that an
"independent security assessment revealed that [the Barron Hotel]
was not any safer than North Gate . . . ."  Id. at 4, ¶ 12.  The
termination did not comply with the protocol under the SOW to
address safety concerns.

Plaintiff continued to discuss possible alternatives with
defendant, such as defendant moving to another of plaintiff's
locations.  In November 2013, plaintiff sent a letter "requesting

3

that [defendant] honor its obligations and compensate [plaintiff] for its expenditures — i.e. a request for an equitable adjustment." Id. at 5, ¶ 15.

As the 2nd PO was still in effect, defendant continued to use the complementary amenities plaintiff had provided under the PO, such as the "cinema room, banquet room, parking spaces, and storage containers." Id. at 6, ¶ 17.  The 2nd PO was terminated on January 15, 2014.  By then, plaintiff had requested equitable adjustment from defendant through a variety of methods.

Because of the terminations, plaintiff suffered a loss of $2,631,272.00 from July 2013, through October 2013 or a loss of $6,578,180 from July 2013 through April 2014, and laid off approximately half of its work force.

\* \* \* \* \*

Plaintiff alleged the following causes of action against defendant: (1) breach of contract, (2) quantum meruit, and (3) promissory estoppel.

The following bases were alleged for plaintiff's breach of contract claims:

(1)  Defendant has failed to pay invoices submitted by plaintiff to defendant for work done from July-October 2013 "and the remainder due under the contracts." Id. at 7, ¶ 22. Apparently this allegation is intended to include plaintiff's

4

claim that defendant owes plaintiff the balance of the full
contract price, based on plaintiff's contention that the PO and
2nd PO were fixed-price contracts that obligated defendant to pay
plaintiff the full contract price when the PO and 2nd PO were
entered into.

(2)   Defendant "failed to comply with the security protocol
described hereinabove."  Id., ¶ 23.  Apparently that claim has
reference to a contention by plaintiff that defendant failed to
follow the procedures outlined in sections 4 and 15 of the SOW,
as plaintiff had alleged in the last two sentences of paragraph
12 on page 4 of the Complaint.

(3)   Defendant failed to provide an equitable adjustment to
plaintiff after defendant terminated the contract for convenience
as paragraph 20 of the T&C contemplated.

Plaintiff pleaded quantum meruit and promissory estoppel
claims based on the facts that it (1) "invest[ed] millions of
dollars into this project" and (2) provided goods and services
"in connection with [defendant's] requested security upgrades
between July and August 2013."  Id. at 7-8, ¶¶ 26 & 27.

II.

## Defendant's Motion

Defendant contends that the Complaint fails to state a claim upon which relief may be granted because the allegations of the Complaint, including the exhibits to the Complaint, show that (1) defendant properly terminated the contract for convenience as the contract authorized, (2) the regulation on which plaintiff relies in support of its contention that the termination for convenience was not properly accomplished does not apply to this contract between private parties; (3) plaintiff is not entitled to an equitable adjustment because it did not request such an adjustment within thirty days of termination of the contract, (4) the contract did not contemplate that the full contract price would be paid at commencement of the contract, but, rather it contemplated that defendant would pay for plaintiff's services as plaintiff invoiced defendant from time-to-time for those services, and (5) the existence of a valid contract precludes plaintiff from recovering under quantum meruit or promissory estoppel.

6

III.

## Analysis

A.   Standards Applicable to the Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Id. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. To

7

allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In a case such as this, where the plaintiff has submitted exhibits to his Complaint, the exhibits are part of the Complaint for all purposes. See Fed. R. Civ. P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for all purposes"). See also United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 375 (5th Cir. 2004)(holding that "it is not error to consider the exhibits to be part of the complaint for purposes of a Rule 12(b)(6) motion").

B.   The Breach of Contract Claims

With the exceptions of (a) the failure to pay invoices for services rendered before the contracts were terminated and (b) the equitable adjustment features of plaintiff's breach of contract claims, the court has concluded that dismissal is appropriate as to all features of those claims.

1.   The Termination for Convenience Clause is Not Governed
     by the Federal Acquisition Regulations

Plaintiff acknowledged that defendant had the right to
terminate the PO and 2nd PO upon thirty days' notice under the
Termination for Convenience clause in the T&C.   However,
plaintiff alleged that such terminations were not effective in
this case because of defendant's failure to comply with federal
regulations, making specific reference to Chapter 48 of the Code
of Federal Regulations.   Compl. at 4, ¶¶ 13-14.

Chapter 48 of the Code of Federal Regulations is known as
the Federal Acquisition Regulations System ("FAR").   It was
"established for the codification and publication of uniform
policies and procedures for acquisition by all executive
agencies."   48 C.F.R. 1.101.   The FAR "applies to all
acquisitions as defined in part 2 of the FAR, except where
expressly excluded."   48 C.F.R. 1.104.   Part 2 defines
acquisitions as "the acquiring by contract with the appropriated
funds of supplies or services (including construction) by and for
the use of the Federal Government through purchase or lease . . .
."  48 C.F.R. 2.101.   This contract was not executed by the
government and, therefore, is not an "acquisition" under FAR
regulations.   Also, section 49.102 requires that, in terminating
a contract for convenience, the notice must state "(1) [t]hat the

9

contract is being terminated for the convenience of the Government . . . ."  48 C.F.R. 49.102.  A plain reading of this provision makes it clear that it is intended to apply to contracts with the government as a party.

Finally, in support of its proposition that the FAR applies to this contract, plaintiff pointed to 48 C.F.R. 49.002.  Section (a)(1) of that provision states "[t]his part applies to contracts that provide for termination for the convenience of the Government or for the default of the contract . . ."; therefore, it does not apply in this instance.  48 C.F.R. 49.002(a)(1). Section (b) of that provision applies only where the subcontract was terminated because of a modification of the prime contract, which also is not applicable to this contract.

Because the Termination for Convenience clause in the contract is not governed by FAR regulations, the defendant did not breach the contract by failing to comply with those regulations.  Therefore, the Complaint fails to allege facts that support plaintiff's claim that defendant breached the contract by its termination for convenience.

2.  <u>Breach of Security Protocol</u>

Defendant contends in the motion that the provisions of the SOW dealing with security concerns did not abrogate its right to terminate for convenience, and that, therefore, there is no valid

10

allegation in the Complaint that it breached the contract by
failing to utilize such provisions to address its safety
concerns.  Section 4 of the SOW required plaintiff to make
security upgrades requested by defendant, and section 15 involved
health and safety audits/inspections and safety equipment.
Neither of these provisions limits defendant's right to terminate
for convenience under the contract.  Therefore, insofar as
plaintiff claims that defendant breached the contract by
terminating the contract for convenience instead of utilizing
these provisions to address safety concerns, plaintiff fails to
state a claim upon which relief may be granted.

> 3.    The Full Contract Price Was Not Payable at Commencement
>        of the Contract

As defendant points out in the brief it filed in support of
its motion, Def.'s Mot & Br. at 9-11, and in the reply brief in
support of the motion, Reply Br. at 6-8, the contract documents
establish as a matter of law that the parties contemplated that
defendant's payment obligations to plaintiff would depend on
billings by plaintiff to defendant for services rendered.
Defendant correctly points out that there is no reasonable
reading of the contract documents that would support a conclusion
that defendant had an obligation to pay the full contract amounts
at commencement of the contracts.  Therefore, to whatever extent

the Complaint seeks recovery for services rendered or things done

by plaintiff for defendant after the terminations for convenience

went into effect, the allegations of the Complaint do not allege

facts that would lead to the conclusion that such a claim is

plausible.

To whatever extent the breach of contract claim includes a

claim that defendant failed to pay invoices submitted to it by

plaintiff for work done prior to defendant's termination of the

contracts, the court hesitates to dismiss that aspect of the

Complaint because there is a specific allegation that plaintiff's

loss was $2,631,272 from July 2013 through October 2013.

Therefore, that limited claim is surviving the motion to dismiss.

4.    Claim for Equitable Adjustment

Defendant argued that it did not breach the contract by

failing to provide an equitable adjustment to plaintiff, because

such an adjustment was not requested within the mandatory thirty-

day period following termination for convenience.

Defendant terminated the PO on August 30, 2013.  In November

2013, plaintiff sent a letter requesting an equitable adjustment.

The 2nd PO was terminated on January 15, 2014.  The contract

states that plaintiff "shall submit a claim for equitable

adjustment within thirty (30) days of receipt of the termination

12

notice." Compl. App. at 14, ¶ 20. Those facts are established
by the Complaint.

Plaintiff contends that it alleged in the Complaint that
within the thirty-day period it tried to work out alternate
arrangements for the defendant, and that its communications with
defendant during that time period, while not using the words
"equitable adjustment," clearly were in the nature of a request
of plaintiff for an equitable adjustment; and, plaintiff argues
that its allegations could lead to a legal conclusion that the
ongoing communications beyond thirty days after termination were
part of a series of communications and attempts centered on an
equitable solution to the termination of the contracts.

The court is not persuaded that plaintiff's breach-of-
contract-claim allegations related to defendant's non-
participation in the equitable adjustment process failed to state
a claim for breach of contract. Therefore, the motion to dismiss
is being denied as to that aspect of plaintiff's breach of
contract claim.

C.   The *Quantum Meruit* and Promissory Estoppel Claims

Defendant argued that plaintiff's claims for quantum meruit
and promissory estoppel fail because of the existence of a valid
contract governing the dispute. Plaintiff's claims are based
upon the fact that plaintiff (1) spent millions of dollars on the

13

project, and (2) performed security upgrades requested by
defendant between July and August 2013.

"The requisites of promissory estoppel are: (1) a promise,
(2) foreseeability of reliance thereon by the promisor, and (3)
substantial reliance by the promisee to his detriment." English
v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983). "Under Texas law, a
contract comprising the disputed promise precludes recovery under
promissory estoppel." Jhaver v. Zapata Off-Shore Co., 903 F.2d
381, 385 (5th Cir. 1990).

"Quantum meruit is an equitable remedy that 'is based upon
the promise implied by law to pay for beneficial services
rendered and knowingly accepted.'" In re Kellogg Brown & Root,
Inc., 166 S.W.3d 732, 740 (Tex. 2005) (citation omitted).
Generally, one "cannot recover under quantum meruit when there is
a valid contract covering the services or materials furnished."
Id. "To recover under the doctrine of quantum meruit, a
plaintiff must establish that: 1) valuable services and/or
materials were furnished, 2) to the party sought to be charged,
3) which were accepted by the party sought to be charged, and 4)
under such circumstances as reasonably notified the recipient
that the plaintiff, in performing, expected to be paid by the
recipient." Heldenfels Bros., Inc. v. City of Corpus Christi,
832 S.W.2d 39, 41 (Tex. 1992).

Plaintiff's claims based on the money it invested in order to provide supplies and services to defendant under the contract are governed by the equitable adjustment provision of the contract.  Furthermore, section 4 of the SOW required plaintiff to make any security upgrades required by defendant based upon current situations or threat levels.  Because specific provisions of the contract govern each of plaintiff's complaints in promissory estoppel and quantum meruit, plaintiff has failed to state a claim upon which relief may be granted as to those claims.

D.   Conclusion

As indicated by the foregoing discussions, the court has concluded that the Complaint fails to state any claim upon which relief may be granted except as to (a) the claim that defendant has failed to pay plaintiff for invoices plaintiff submitted to defendant for services plaintiff rendered before the contracts terminated and (b) the claim that defendant failed to comply with its obligation to participate in an equitable adjustment process as contemplated by paragraph 20 of the T&C, which provides in pertinent part as follows:

> Seller shall submit a claim for equitable adjustment
> within thirty (30) days of receipt of the termination
> notice.  If the termination involves only services,
> Buyer shall be obligated to pay only for services
> performed before the termination date, plus reasonable

15

> administrative costs to prepare the claim.  Seller
> shall provide Buyer any supporting information
> necessary to document the reasonableness of Seller's
> claim.

Mot., App. at 14, ¶ 20.

The court has not meant in this memorandum opinion to suggest that plaintiff has a viable claim for failure by defendant to participate in an equitable adjustment process, only that the court is not comfortable at this time in holding that plaintiff has failed to allege sufficient facts to allow the plaintiff to go forward on such a theory.

The thought occurs to the court that there may be a question as to what kind of relief should be given plaintiff if the court ultimately concludes that defendant wrongfully failed to participate in the equitable adjustment process.  Perhaps an order obligating defendant to participate in such a process at this time would be appropriate.  The court will look forward to hearing further from the parties on that subject as the case goes forward.

V.

Order

For the reasons stated in the foregoing memorandum opinion,

The court ORDERS that all claims asserted by plaintiff in the Complaint except (a) the claim that defendant failed to pay

16

plaintiff's invoices for services plaintiff rendered to defendant under the contracts before the contracts terminated, and (b) the claim related to the failure of defendant to participate in the equitable adjustment process be, and are hereby, dismissed because of the failure of the Complaint to allege facts from which the court can plausibly conclude that plaintiff has stated a claim against defendant for anything other than possibly (a) the claim related to the alleged failure of defendant to pay plaintiff for services rendered by plaintiff before the contracts terminated, and (b) the claim pertaining to defendant's alleged failure to engage in the equitable adjustment process.

SIGNED February 24, 2015.

JOHN McBRYDE
United States District Judge

17